TERRY NALI and WILLIAM GRIMM,
as Trustees of the Twin City Floor
Covering Industry Pension Fund, Twin
City Floor Covering Industry Fringe
Benefit Fund and each of their successors,

        Plaintiffs,

v.

                      **MEMORANDUM OF LAW & ORDER**
                      Civil File No. 09-3625 (MJD/JJK)

MAXPRO FLOORING, LLC, and
CLINT JOHNSON, individually,

        Defendants.

Amanda R. Cefalu and Pamela Hodges Nissen, Anderson, Helgen, Davis & Nissen, PA, Counsel for Plaintiffs.

Diane M. Odeen and James R. Johnson, Lommen, Abdo, Cole, King & Stageberg, PA, Counsel for Defendants.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Entry of Judgment.

[Docket No. 21]

## II. BACKGROUND

### A. The Parties and the Collective Bargaining Agreement

Plaintiffs Terry Nali and William Grimm are the Trustees and fiduciaries of the Twin City Floor Covering Industry Pension Fund and the Twin City Floor Covering Industry Fringe Benefit Trust Fund ("Funds").  (December 17, 2010, Findings of Fact, Conclusions of Law, and Order for Default Judgment and Injunction ("Dec. 2010 Order") at 1.)  Defendant MaxPro Flooring, LLC ("MaxPro") was bound by the terms of the Collective Bargaining Agreement ("CBA") with the Carpet, Linoleum, Resilient Tile Layers Local #596 of the Lakes and Plains Regional Council of Carpenters and Joiners.  (Id. at 2; [Docket No. 11] Nali Aff. ¶ 2; Nali Aff., Exs. A-B.)  Defendant Clint Johnson agreed to be personally bound to the terms of the CBA.  (Dec. 2010 Order at 2; Nali Aff. ¶ 3; Nali Aff., Ex. C.)  MaxPro and Johnson became bound by the CBA on May 14, 2009.  (Nali Aff., Ex. C.)

The CBA itself states that it is effective "from June 1, 2007 to May 31, 2010 and shall continue in full force and effect from year to year thereafter unless written notice of intention to terminate or modify this [CBA] is made by either party to the other sixty (60) days prior to the date of expiration or any anniversary date."  (Nali Aff., Ex. A, CBA ¶ 27.01.)  Plaintiffs aver that, according

to their records, neither party has abrogated or terminated the CBA, so it is still in place. (Nasstrom Aff. ¶ 7.)

Under the CBA, Defendants were required to make contributions on behalf of covered employees by the tenth day of the following month. (Dec. 2010 Order at 2; Nali Aff., Ex. A, CBA § 23.07.) A penalty of $10.00 or ten percent of the amount due, whichever is greater, is assessed for amounts not paid by the twenty-first day of the month. (Id.)

The CBA provides that the Funds have the authority to audit MaxPro and Johnson's records when deemed necessary by Plaintiffs and that Defendants shall make their records available to the Funds for that purpose. (Dec. 2010 Order at 2-3; CBA § 23.09.) If the audit shows a discrepancy of more than 5% of the money paid to the Funds, Defendants shall cover the cost of the audit. (Dec. 2010 Order at 3-4; CBA § 23.09.) Additionally, the CBA requires that Defendants pay all "legal costs" incurred by the Funds in collecting delinquent contributions. (Dec. 2010 Order at 3-4; CBA § 23.07.) See also 29 U.S.C. § 1132(g)(2)(D) (providing that, if the plan fiduciary brings a successful action on behalf of the plan, "the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant").

**B.     Case Before the Honorable Ann D. Montgomery**

On August 6, 2009, Nali and Grimm sued MaxPro and Johnson in the District of Minnesota in <u>Nali v. MaxPro Flooring, LLC</u>, Civil File No. 09-2070 (ADM/JJK) ("ADM Case").  The Complaint was based on MaxPro and Johnson's failure to submit fringe benefit reports and contributions based on those reports for the months of May and June 2009.  In the ADM Case, brought under the same CBA as this case, Plaintiffs sought fringe fund reports for May and June 2009, as well as all fringe benefit reports "which become due throughout the pendency of this litigation." (ADM Case Compl. at 6.)  Plaintiffs sought judgment for "delinquent contributions shown to be owing pursuant to those reports, plus all additional amounts to which the Plaintiffs are entitled." (<u>Id.</u>)  Defendants failed to respond or appear in the ADM Case.

Defendants eventually produced the requested fringe reports for June, July, and August 2009; they self-reported an amount due of $16,088.50; and Plaintiffs sought entry of a default judgment for the amounts reported by Defendants.  (ADM Case [Docket No. 7-10].)

In November 2009, Defendants released a check for $20,169.67 to Plaintiffs from MCI, an account receivable, in connection with a pre-judgment garnishment served in the ADM Case.  (Cefalu Aff., Ex. C.)  At that time, Johnson

signed an authorization to release the funds, and the authorization named the ADM Case. (Id.)

On December 1, 2009, the Court entered judgment for $19,993.46 in the ADM Case, consisting of $16,088.50 in fringe fund contributions, $1,608.85 in liquidated damages, and $2,296.11 in attorney's fees and costs. (ADM Case [Docket Nos. 13, 16].) The Court specifically held: "Pursuant to the fringe fund reports untimely submitted for the months of June, July and August, 2009, $16,088.50 is due and owing for delinquent fringe fund contributions." (ADM Case [Docket No. 13] at 3.)

### C.    Current Case

On December 18, 2009, a few weeks after obtaining judgment in the ADM Case, Plaintiffs filed the current Complaint against MaxPro and Johnson in this Court. The Complaint alleges: Count I: Breach of Contract/Failure to Submit to an Audit and Count II: ERISA Damages. The Complaint seeks an order requiring Defendants to submit to an audit and to pay "all unpaid fringe benefit contributions discovered to be due pursuant to the audit of the period of May 1, 2009 to the present plus all additional amounts to which the Plaintiffs are entitled." (Compl. at 6-7.)

On April 13, 2010, the Summons and Complaint were served on MaxPro and Johnson. [Docket No. 2] Defendants failed to answer or otherwise respond. On May 6, 2010, the Clerk granted Plaintiffs' motion and entered Default against Defendants. [Docket No. 6]

On September 14, 2010, Plaintiffs filed a Motion for Default Judgment and Injunction. [Docket No. 8] Despite being personally served with the motion and accompanying papers [Docket No. 13], Defendants failed to appear or otherwise respond.

Plaintiffs averred that the Funds' auditor requested that Defendants produce records for the months of May 2009 through the present ("Audit Period"). (Nali Aff. ¶ 9.) After the Complaint was filed, Defendants produced some bank records and cancelled checks, but failed to produce the remaining requested records for the Audit Period. (Id. ¶ 10.) The Funds believed that Defendants employed individuals during the Audit Period for whom contributions may be due and owing. (Id. ¶ 11.)

After a default hearing on December 17, 2010, the Court granted Plaintiffs' motion. [Docket Nos. 14-15] The Court's Order required Defendants to provide the payroll and employment records for May 2009 through the present

(December 17, 2010), to the Funds within ten days from the date that the Order was served on Defendants. The Court held that, once the audit information was provided, Defendants would be liable for the amount of delinquent contributions found owing pursuing to the audit, liquidated damages, audit fees, and reasonable costs and attorney's fees incurred. Plaintiffs would file a motion for entry of a money judgment based on the results of the audits, and Defendants would have ten days to respond. There would be no need for a hearing, unless the Court orders otherwise. The Court would then enter judgment.

**D.   Satisfaction of the Judgment in the ADM Case**

Defendants satisfied the ADM Case judgment. Johnson claims that Plaintiffs received full payment for the ADM Case judgment sometime in 2010. (Johnson Aff. ¶ 21.) Defendants have also submitted copies of three checks showing payment by Defendants to the Union in March 2010, totaling $878.00. (Isakson Aff., Ex. M.) There is no indication on these checks that they were written to satisfy any particular obligation, such as the ADM Case judgment. Plaintiffs filed a Satisfaction of Judgment in the ADM Case on March 26, 2012. (ADM Case [Docket No. 17].)

In February 2012, Plaintiffs commenced a garnishment action in the ADM Case against Johnson's personal bank account. (Johnson Aff. ¶¶ 23-24; Isakson

Aff., Ex. H.)  There is no evidence regarding how much money, if any, that Plaintiffs collected through that garnishment action.

### E.    Current Motion Before this Court

Using documents provided by Defendants, Plaintiffs performed an audit of the fringe benefits owed for the period May 2009 through December 10, 2010, based on MaxPro's bank records.  (Nasstrom Aff. ¶¶ 3, 5, 8.)  Johnson avers that MaxPro did not keep or require time cards.  (Johnson Aff. ¶ 14.)  The only financial records for MaxPro are Wells Fargo account statements and copies of checks.  (Id. ¶¶ 11-12.)  On July 23, 2012, Plaintiffs filed the current Motion for Entry of Judgment.  [Docket No. 21]

On July 24, 2012, Plaintiffs sent a letter to the Court stating that Plaintiffs had completed the audit for the time period of May 2009 through December 2010; Defendants had retained an attorney; Plaintiffs had served the current Motion for Entry of Default on Defendants in April 2012; and Defendants had objected to the amount found owing under the audit.

Plaintiffs now move for an entry of money judgment in the amount of $33,631.09, consisting of fringe benefit contributions of $24,828.99, liquidated damages of $2,482.90, attorney's fees of $5,612.50, and costs of $706.70, all for the Audit Period of May 2009 through December 2010.

8

Defendants filed their objection and seek a hearing, a finding that the judgment in this case has already been satisfied, denial of Plaintiffs' motion, an order vacating the default judgment entered against Defendants as satisfied, dismissal of the Complaint with prejudice, and an order awarding Defendants their costs and fees expended in defending this allegedly duplicative matter.

## III.    DISCUSSION

Defendants claim that the motion is based on a previously satisfied judgment in the ADM Case, and so the motion is barred by Federal Rule of Civil Procedure 60(b)(5), accord and satisfaction, res judicata, and collateral estoppel. Defendants also claim that the audit reports are inaccurate.

### A.    Accord and Satisfaction

Defendants claim that accord and satisfaction bars the current motion because Plaintiffs have already collected more than $20,000 from Defendants for contributions owed under the CBA.

> An accord is a contract in which a debtor offers a sum of money, or some other stated performance, in exchange for which a creditor promises to accept the performance in lieu of the original debt.  The satisfaction is the performance of the accord, generally the acceptance of money, which operates to discharge the debtor's duty as agreed to in the accord.

Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp., 617 N.W.2d 67, 72

(Minn. 2000) (citations omitted).

> An enforceable accord and satisfaction arises when a party against
> whom a claim of breach of contract is asserted proves that (1) the
> party, in good faith, tendered an instrument to the claimant as full
> satisfaction of the claim; (2) the instrument or an accompanying
> written communication contained a conspicuous statement to the
> effect that the instrument was tendered as full satisfaction of the
> claim; (3) the amount of the claim was unliquidated or subject to a
> bona fide dispute; and (4) the claimant obtained payment of the
> instrument.

Id. at 73 (citation and footnotes omitted). "The purpose of accord and

satisfaction is to allow parties to resolve disputes without judicial intervention by

discharging all rights and duties under a contract in exchange for a stated

performance, usually a payment of a sum of money." Id.

Defendants argue that Plaintiffs have already accepted payment of more

than $20,000 for benefits owed by Defendants under the terms of the CBA. They

claim that the judgment in the ADM Case functioned as a contract between the

two parties, and Defendants satisfied that debt. Defendants further argue that

this Court should relieve them of the judgment currently existing in this case

because it has already been satisfied and its existence is no longer equitable. See

Fed. R. Civ. P. 60(b)(5) (permitting Court to relieve a party from a final judgment

when "the judgment has been satisfied, released or discharged" or when

"applying it prospectively is no longer equitable").

> An accord and satisfaction is conclusive regarding matters actually
> included in the settlement, which is viewed objectively.  Absent
> evidence of an express agreement, a court will look to the conduct of
> the parties to determine whether the parties fully performed
> pursuant to the accord, and if they have, satisfaction in presumed.

Lake Home Prods., LLC v. Sandee Mfg. Co., No. Civ.03-6331 (MJD/JGL),

2005 WL 1490312, at *5 (D. Minn. June 23, 2005) (citations omitted).

The Court rejects Defendants' theory of accord and satisfaction.  Here, the

Court can objectively determine that the ADM Case and the Order issued in that

case related solely to Defendants' failure to comply with their monthly reporting

obligation.  The final order in the ADM Case specifically provided that the

judgment was based only on the "fringe benefit reports" submitted by

Defendants for the months of June, July, and August 2009.  (ADM Case [Docket

No. 13] at 3.)  Thus, the ADM Case judgment did not foreclose Plaintiffs' ability

to audit Defendants' payroll records for the same period.

The approximately $20,000 receivable check signed over to Plaintiffs was

clearly provided in satisfaction of the ADM Case only – that case is specifically

referenced in the document signed by Johnson.  In turn, the ADM Case judgment

is explicitly based only on the amounts self-reported by Defendants in the fringe benefit reports provided for June, July, and August 2009. There was no agreement between the parties to perform an audit or to satisfy any amount that might be found owing after an audit. This lawsuit relates to under-reported hours not included in the fringe benefit reports Defendants submitted in conjunction with the ADM Case, while the ADM Case related to hours that Defendants voluntarily reported. There have been no agreements between the parties pursuant to the ADM Case that related to Plaintiffs' right to audit Defendants' payroll and employment records.

**B.     Res Judicata and Collateral Estoppel**

Defendants argue that both collateral estoppel and res judicata bar Plaintiffs' current motion.

"The preclusive effect of a federal-court judgment is determined by federal common law."  Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (citation omitted).

Collateral estoppel applies when

(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and

final judgment; and (5) the determination in the prior action must
have been essential to the prior judgment.

Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (citation omitted).

Under res judicata a final judgment on the merits of an action
precludes the parties or their privies from relitigating issues that
were or could have been raised in that action.  To establish that a
claim is barred by res judicata a party must show: (1) the first suit
resulted in a final judgment on the merits; (2) the first suit was based
on proper jurisdiction; (3) both suits involve the same parties (or
those in privity with them); and (4) both suits are based upon the
same claims or causes of action.

Yankton Sioux Tribe v. U.S. Dept. of Health & Human Servs., 533 F.3d 634, 639

(8th Cir. 2008) (citations omitted).  "[A] claim is barred by res judicata if it arises

out of the same nucleus of operative facts as the prior claim."  Id. at 641 (citation

omitted).

Collateral estoppel and res judicata are both affirmative defenses, subject

to waiver if not pled by the party asserting them.  See Taylor, 553 at 907;

Huffman v. Pursue, Ltd., 420 U.S. 592, 607 n.19 (1975); see also United States v.

Metro. St. Louis Sewer Dist., 952 F.2d 1040, 1043 (8th Cir. 1992) ("Res judicata is

not a jurisdictional issue; rather, it is an affirmative defense that may be waived

by the party allowed to assert it.").  "However, when an affirmative defense is

raised in the trial court in a manner that does not result in unfair surprise,

technical failure to comply with Rule 8(c) is not fatal." <u>Sherman v. Winco Fireworks, Inc.</u>, 532 F.3d 709, 715 (8th Cir. 2008) (citation omitted).

The Court concludes that, by defaulting in this case, Defendants have waived the affirmative defenses of res judicata and collateral estoppel. Defendants defaulted in this case – they filed no answer or motion in this case at all, let alone one that asserted the affirmative defenses of res judicata or collateral estoppel. They failed to contest the Complaint or appear at the default hearing. The Court entered judgment in this matter in December 2010, definitively concluding that Plaintiffs will be liable for any delinquent contributions found during the audit for the time period specified. It is too late, two years later, for Defendants to now assert res judicata and collateral estoppel. Application of these new affirmative defenses for the first time, years after judgment was already entered, would result in unfair surprise and prejudice to Plaintiffs.

The Court concludes that the only issue before the Court at this time is the accuracy of the amounts found owing under the audit. The Court must ensure that Defendants do not pay twice for the same fringe benefits owed. But it will not apply res judicata or collateral estoppel at this point in the litigation.

**C.     Accuracy of the Audit**

### 1. Period After May 2010

Defendants note that Plaintiffs currently seek judgment for an Audit Period ending in December 2010. They claim, however, that the CBA between the parties was only in place from May 14, 2009 through May 31, 2010. Defendants also argue that Plaintiffs' Complaint only sought relief for May 1, 2009 through the "present," which, at the time of the filing of the Complaint, was December 18, 2009. Thus, they claim that the proper Audit Period should be May 2009 through December 18, 2009.

The Court rejects Defendants' argument that they owe no fringe benefits after May 2010 because the CBA expired in that month, not in December 2010. Defendants waived that argument by defaulting on this case. In its December 2010 Order, the Court already determined that the applicable period for audit and payment was through December 2010. (December 2010 Order at 3-5.) Judgment was entered on that Order. Moreover, Plaintiffs accurately point out that the CBA automatically renews unless one of the parties gives proper notice of termination. Plaintiffs aver that there is no evidence of termination by either party. Defendants offer no evidence to the contrary. Even if Defendants had not waived that argument through default, the Court would find that the CBA was in effect until December 2010.

Additionally, the fact that the Complaint in this case sought benefits owed through the "present" does not bar recovery beyond the date of the filing of the Complaint. The Court reiterates that Defendants defaulted in this case and failed to respond in any manner before the Court entered judgment in December 2010 setting the Audit Period through December 2010, so Defendants have waived that argument.

### 2. Period Before Defendants Signed the CBA

#### a) Dan Dagostino

Defendants argue that Plaintiffs improperly seek benefits for employee Dan Dagostino from January 2009. (Isakson Aff., Ex. I, Audit Report.) However, Defendants did not enter the CBA until May 14, 2009.

The Court rejects Defendants' argument regarding Dagostino. While it is true that the original audit report does state that Dagostino worked in January 2009, that date is clearly a typographical error. The hours on the original invoice for Dagostino were incorrectly listed as 1/09 instead of 10/09, for October 2009. (Nasstrom Aff. ¶ 4.) Auditor Nasstrom avers that he intended to write 10/09. (Id.) He has submitted a corrected audit invoice with the October 2009 date. (Nasstrom Aff., Ex. A.) The evidence in the record demonstrates that the

payment to Dagostino was by a check erroneously dated "11/17/09" but deposited on October 17, 2009. (Isakson Aff., Ex. G at 30.) Thus, the hours are within the purview of the Order and the CBA.

### b)     Dennis Babineau and Steven Damsgaard

Defendants claim that employees Dennis Babineau and Steven Damsgaard did not work in the second half of May 2009, once the Agreement was in effect; therefore, the hours for these employees should not be included on the invoice.

The Court rejects Defendants' objection. The Funds' records, received directly from the employees, show that Babineau worked between May 17-29, 2009, and Damsgaard worked 84.5 hours from May 18-31, 2009 – although Defendants only reported 40 hours for that time period. (Nasstrom Aff. ¶ 5; Nasstrom Aff., Ex. B.)

### 3.     Amounts Due Other than Wages

Defendants argue that Plaintiffs' audit report is partly based on checks that do not represent wages paid to employees. Specifically, Plaintiffs point out that check number 1030 was issued to Anthony Stark on September 25, 2009, in the amount of $3,500 with the memo "start-up reimbursement" noted on the check. (Isakson Aff., Ex. J; Johnson Aff. ¶ 30.) Also, check number 1054 was issued to

Stark on November 13, 2009 for $1,000 for "tool rental."  (Isakson Aff., Ex. J;

Johnson Aff. ¶ 30.)  Defendants assert that the payments to Stark were not for

wages but, instead, were for tools or start-up costs.

The auditor was unable to use timecards to finalize the audit because

Defendants did not maintain time cards or produce more accurate records.

Instead, MaxPro made lump sum payments, so Plaintiffs used the wage rate to

calculate the number of hours worked.  If the auditor was not sure of whether the

payment was issued for wages, he invoiced for it.

Defendants have produced no evidence to substantiate Johnson's claim

that the checks were for non-wage payments.  When a signatory employer's

records are inadequate to determine whether hours identified by an ERISA

auditor are covered by the CBA and there are payments to persons previously

identified as covered employees or carpenters, the Fund's auditor treats the work

as covered.  (Nasstrom Aff. ¶ 5.)  Plaintiffs' practice is appropriate in light of the

fact that ERISA places the burden on employers to maintain accurate records

regarding contributions.  29 U.S.C. § 1059(a)(1) ("[E]very employer shall, in

accordance with such regulations as the Secretary may prescribe, maintain

records with respect to each of his employees sufficient to determine the benefits

due or which may become due to such employees."); Seipel v. Arrowhead Indus. Serv., Inc., No. 07–cv–3864 (PJS/RLE), 2010 WL 605722, at *4 (D. Minn. Feb. 11, 2010) ("An employer should not be able to avoid his obligation to make payments under ERISA by avoiding his obligation to keep records under ERISA.") (citations omitted).  See also Mich. Laborer's Health Care Fund v. Grimaldi Concrete Inc., 30 F.3d 692, 697 (6th Cir. 1994) (holding that when employer does not maintain adequate records but funds have proven that some covered work was performed during period, burden shifts to employer to rebut presumption that all hours worked were covered work); Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 727-28 (8th Cir. 1995) (adopting a burden-shifting principle for inadequate records in context of COBRA and citing Grimaldi with approval), abrogated on other grounds by Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966 (8th Cir. 2002).

Because Defendants blatantly violated their statutory duty to keep records sufficient to determine the amount of fringe benefits owed, the Funds are entitled to shift the burden to Defendants to prove that a payment is not for covered work.  Here, Defendants fail to rebut the presumption that the payment to Stark was for covered work.  The Court rejects Defendants' objection.

### 4.      Amounts Paid in the ADM Judgment

Defendants argue that Plaintiffs' audit also includes amounts due for months that were fully satisfied in the ADM Case judgment.  They conclude that any claims for May 2009 through August 2009 were satisfied by the ADM Case judgment.   Defendants also claim that the fringe benefit report hours were inflated in the ADM Case.

Defendants did not appeal the final order or judgment in the ADM case; the Court rejects their attempt to collaterally attack the amount of that judgment now.  The Court also reiterates that, because Defendants violated their statutory duty to keep records of employee hours worked, they bear the burden of showing that work is not covered and that the audit is inaccurate.

Defendants have no evidence to support their claim that the hours already paid in the 2009 judgment in the ADM Case are included in this motion.  The auditor has specifically averred in his affidavit that the purpose of this audit was to review Defendants' records for hours which were not already reported to the Funds.  (Nasstrom Aff. ¶¶ 3, 5.)  Rather, the audit reflects hours which should have been – but were not – reported by Defendants in the fringe benefit reports upon which the ADM Case judgment was based.  Thus, for example, the auditor discovered that Damsgaard worked 84.5 hours between May 18-31, 2009, but that

Defendants only reported 40 hours. (Id. ¶ 5; compare Nasstrom Aff, Ex. B (showing Damsgaard worked 84.5 hours in May 2009) and Cefalu Aff., Ex. B at 21 (self-report showing 40 hours for Damsgaard in May 2009), with Nasstrom Aff., Ex. A, Payroll Audit Invoice (invoicing Defendants for 44.5 hours for Damsgaard in May 2009).) Thus, the audit correctly invoices only the 44.5 hours that Defendants failed to self-report for Damsgaard for the month of May 2009. (Id.)

Plaintiffs are entitled to judgment for the full amount of the audit invoice.

## D.     Liquidated Damages

"The special remedy against employers who are delinquent in meeting their contractual obligations that is created by § 502(g)(2) includes a mandatory award of prejudgment interest plus liquidated damages in an amount at least equal to that interest, as well as attorney's fees and costs." Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 547 (1988) (citing 29 U.S.C. § 1132(g)(2)) (footnote omitted). Defendants owe Plaintiffs $2,482.90 in liquidated damages, or 10% of the total delinquent contributions owed. (Wilson Aff. ¶ 4.)

## E.     Attorney's Fees and Costs

Under ERISA, an award of reasonable attorney's fees and costs is mandatory when a fiduciary has successfully sued to enforce an employer's obligation to make contributions to a multiemployer plan. See 29 U.S.C. § 1132(g)(2); Advanced Lightweight Concrete, 484 U.S. at 547. Plaintiffs conclude that they are entitled to the fees of $5,612.50 and costs of $706.70 incurred in collecting the delinquent contributions from Defendants and in enforcing their contractual right to audit. However, Defendants have filed no billing records to support their claim for attorney's fees, so the Court is unable to determine the proper amount to award, and Defendants are unable to lodge any objections to the amount billed. Thus, the Court will deny, without prejudice, Plaintiffs' requests for an award of costs and attorney's fees. Plaintiffs may file a separate motion for attorney's fees and costs, with supporting documentation, within 30 days of the date of this Order. Defendants may file their objection, if any, to the amount of attorney's fees and costs requested. Their objection must be filed within 30 days after Plaintiffs' motion is filed.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Entry of Judgment [Docket No. 21] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      Plaintiffs' request for an award of attorney's fees and
        costs is **DENIED WITHOUT PREJUDICE**; and

2.      Plaintiffs shall have judgment against Defendants in the
        amount of $24,828.99 for fringe benefit contributions for
        the Audit Period of May 14, 2009 through December
        2010, and in the amount of $2,482.90 for liquidated
        damages; for a total judgment in the amount of
        $27,311.98.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   February 24, 2013             s/Michael J. Davis
                                       Michael J. Davis
                                       Chief Judge
                                       United States District Court