# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

TERRY NALI and WILLIAM GRIMM,
as Trustees of the Twin City Floor
Covering Industry Pension Fund, Twin
City Floor Covering Industry Fringe
Benefit Fund and each of their successors,

        Plaintiffs,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 09-3625 (MJD/JJK)

MAXPRO FLOORING, LLC, and
CLINT JOHNSON, individually,

        Defendants.

Amanda R. Cefalu and Pamela Hodges Nissen, Anderson, Helgen, Davis & Nissen, PA, Counsel for Plaintiffs.

Diane M. Odeen and James R. Johnson, Lommen, Abdo, Cole, King & Stageberg, PA, Counsel for Defendants.

## I.      INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Attorney Fees and Costs.  [Docket No. 39]

## II.     BACKGROUND

The factual background of this dispute is set forth in detail in this Court's Order filed February 25, 2013, entering default judgment and damages [Docket No. 36]. Generally, Plaintiffs Terry Nali and William Grimm are the Trustees and fiduciaries of the Twin City Floor Covering Industry Pension Fund and the Twin City Floor Covering Industry Fringe Benefit Trust Fund ("Funds"). Defendants MaxPro Flooring, LLC ("MaxPro") and Clint Johnson were bound by the terms of the Collective Bargaining Agreement ("CBA") with the Carpet, Linoleum, Resilient Tile Layers Local #596 of the Lakes and Plains Regional Council of Carpenters and Joiners. Under the CBA, Defendants were required to make contributions on behalf of covered employees.

On August 6, 2009, Nali and Grimm sued MaxPro and Johnson in the District of Minnesota in Nali v. MaxPro Flooring, LLC, Civil File No. 09-2070 (ADM/JJK) ("ADM Case"). The Complaint was based on MaxPro and Johnson's failure to submit fringe benefit reports and contributions based on those reports for the months of May and June 2009. Defendants failed to respond or appear in the ADM Case. Defendants eventually produced the requested fringe reports for June, July, and August 2009; they self-reported an amount due of $16,088.50; and Plaintiffs sought entry of a default judgment for the amounts reported by

Defendants.  (ADM Case [Docket No. 7-10].)  On December 1, 2009, the Court

entered judgment for $19,993.46 in the ADM Case.  (ADM Case [Docket Nos. 13,

16].)

On December 18, 2009, a few weeks after obtaining judgment in the ADM

Case, Plaintiffs filed the current Complaint against MaxPro and Johnson in this

Court.  The Complaint seeks an order requiring Defendants to submit to an audit

and to pay "all unpaid fringe benefit contributions discovered to be due

pursuant to the audit of the period of May 1, 2009 to the present plus all

additional amounts to which the Plaintiffs are entitled."  (Compl. at 6-7.)

Defendants failed to answer or otherwise respond, and on December 17, 2010,

the Court granted Plaintiffs' motion for default judgment.  [Docket Nos. 14-15]

The Court's Order required Defendants to provide the payroll and employment

records for May 2009 through the present (December 17, 2010), to the Funds

within ten days from the date that the Order was served on Defendants.  The

Court held that, once the audit information was provided, Defendants would be

liable for the amount of delinquent contributions found owing pursuing to the

audit, liquidated damages, audit fees, and reasonable costs and attorney's fees

incurred.

Plaintiffs filed a Satisfaction of Judgment in the ADM Case on March 26, 2012.  In February 2012, Plaintiffs commenced a garnishment action in the ADM Case against Johnson's personal bank account.

Using documents provided by Defendants, Plaintiffs performed an audit of the fringe benefits owed for the period May 2009 through December 10, 2010. On February 25, 2013, this Court granted Plaintiffs' Motion for Entry of Judgment and awarded $27,311.98 for fringe benefit contributions for the Audit Period of May 14, 2009 through December 2010, and liquidated damages.  The Court denied, without prejudice, Plaintiffs' request for attorney's fees and costs because Plaintiffs filed no billing records to support their claim for attorney's fees, so the Court was unable to determine the proper amount to award, and Defendants were unable to lodge any objections to the amount billed. Defendants have now filed their billing records to support their request for attorneys' fees.

Plaintiffs now request an attorney's fees award of $7,092.00.  Defendants request that the Court reduce the award of attorney's fees to $5,762.75.

III.    DISCUSSION

Under ERISA, an award of reasonable attorney's fees and costs is

mandatory when a fiduciary has successfully sued to enforce an employer's

obligation to make contributions to a multiemployer plan.  See 29 U.S.C. §

1132(g)(2); Laborers Health and Welfare Trust Fund For Northern California v.

Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 547 (1988).  Thus,

Plaintiffs are entitled to their reasonably incurred attorney's fees spent on this

current lawsuit.

Defendants do not object to Plaintiffs' counsels' billing rate, and, based on

its own independent review and knowledge of the prevailing billing rates in this

market for this type of work, the Court agrees that the rates requested are

reasonable.  However, Defendants have filed objections to the amount of fees on

two grounds: some of the fees were incurred with regard to the ADM Case, not

this case, and Plaintiffs previously represented to Defendants that they had

incurred a lower amount of fees through May 2012 than they now claim.  The

Court addresses each objection in turn.

### A.    Fees Incurred in Connection with the ADM Case

Defendants assert that $1,446.25 of the $7,092.00 in attorney's fees claimed

by Plaintiffs are related to the ADM Case and, thus, were not incurred in

litigating the claims in this case. The Court addresses each disputed entry in turn.

First, Defendants point to a February 10, 2012 entry by ARC. The description of the entry describes work related to the garnishment proceedings, which are connected solely to the ADM Case. Thus, all of the attorney's fees connected with this entry – $125.00 – are disallowed.

Second, Defendants point to a February 10, 2012 entry by ASB describing efforts to search for Defendant Johnson. Defendants assert that this entry is related to collection efforts on the first judgment. The Court overrules this objection because, while efforts to locate Johnson may have helpful to collection efforts related to the ADM Case, they are also relevant to efforts to obtain audit materials and collect in this current lawsuit.

Third, Defendants note a February 21, 2012 entry by ASB which includes conferences with Defendant Johnson regarding the outstanding judgment, the current lawsuit, and the current situation. This entry describes work regarding the interplay of the ADM lawsuit and the current lawsuit and the amounts owed in each. This work was necessary and reasonable in order to pursue the current lawsuit. The Court will allow this entry in its entirety.

Fourth, Defendants point to a March 2, 2012 entry by ASB.  Most of the description for this entry relates to work done related to the audit of the 2009 hours.  Additionally, ASB reviewed completed documents related to the garnishment proceedings.  The majority of the description of this entry is related to reimbursable work; however the time spent on the garnishment proceedings is not reimbursable in this case.  Both reimbursable and non-reimbursable activities are contained in this block billing entry, and Plaintiffs have not attempted to separate out the amount of time spend on each task.  "If a block entry is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion."  <u>Charlery v. STX Rx, Inc.</u>, Civil Action No. 2004–0065, 2005–0134, 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) (citation omitted).  Because Plaintiffs' counsels' choice to employ block billing makes it difficult to determine the portion of time allocated to each task, the Court will "split the difference between the parties."  <u>Id.</u> (citation omitted).  The Court will cut the requested $303.75 billed to this entry by $151.88.

Fifth, Defendants object to a March 26, 2012 entry by ASB.  Much of the description of the time spent relates to the audit; however, time was also spent

on the garnishment proceeding and the satisfaction of judgment for the ADM

case, neither of which are reimbursable in this case.  For the reasons explained

with respect to the fourth entry, the Court will cut the amount of fees for this

block of time in half, and will deduct $101.25 from the $202.50 requested for this

entry.

Sixth, Defendants object to a March 26, 2012 entry by PHN which is solely

related to the garnishment proceedings and the satisfaction of judgment in the

ADM Case.  None of the work done in this entry is reimbursable in the case, so

the full $72.50 is disallowed.

In total, the Court deducts $450.63 from the amount of attorney's fees

requested.  The Court allows $6,641.87.

### B.    Plaintiffs' Earlier Representation of a Lower Fee Amount

Defendants note that, in May 2012, they expressed a concern to Plaintiffs

regarding the amount of attorney's fees incurred in this matter.  Plaintiffs

responded with a May 18, 2012 letter stating that they had incurred $3,211.45 in

attorney's fees and costs for the current lawsuit.  (Johnson Aff., Ex. A.)

Defendants note that, now, Plaintiffs claim $4,118.75 in attorney's fees through

May 18, 2012, approximately $900 more than the amount of attorney's fees noted

in the May 18, 2012 letter.  Defendants argue that this discrepancy indicates that

fees related to the ADM Case were likely included in the billing records submitted for this case.

The May 18, 2012 letter does not state the dates for the claimed $3,211.45 in attorney's fees and costs, so the Court cannot make meaningful comparison between the amount stated in the letter and the amount claimed in the billing records.  The Court has reduced the amount claimed in the billing records wherever there is a question regarding whether time was spent on the ADM Case.  The Court is satisfied that this method has resulted in a fair and reasonable assessment of attorney's fees and will not further reduce the amount based on the May 18, 2012 letter.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Attorney Fees and Costs [Docket No. 39] is **GRANTED** as follows:  Defendants are ordered to pay $6,641.87 to Plaintiffs comprising Plaintiffs' attorney's fees incurred in this action.


Dated:   May 7, 2013                         s/ Michael J. Davis
                                             Michael J. Davis
                                             Chief Judge
                                             United States District Court